UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| NANCY J. WINNINGHAM, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 4:12-cv-6 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Nancy Winningham appeals the Social Security Administration's decision to deny her application for disability insurance benefits. An administrative law judge found that Winningham was not disabled within the meaning of the Social Security Act. Winningham raises a number of challenges to this determination, but I conclude that the ALJ's decision was supported by substantial evidence. The decision of the ALJ will therefore be affirmed.

## BACKGROUND

Readers looking for a detailed discussion of Winningham's medical record are directed to the detailed summaries in the ALJ's decision [R. 12-19] and in Winningham's opening brief [DE 16 at 6-16]. Rather than simply reiterating those summaries, I will give a brief overview of the history of Winningham's health issues.

Winningham applied for disability benefits on November 28, 2007, alleging a disability beginning on November 27, 2004. (Because of some procedural quirks involving an earlier application by Winningham, the ALJ ultimately found that her effective alleged disability onset date was October 26, 2007, though he still considered evidence that predated this effective date.

[R. 10.])  Winningham alleged a variety of disabilities that were well summarized in the ALJ's decision:

> The claimant alleged an inability to work due to a constellation of maladies.  The claimant reported widespread joint and muscle pain that had a constant, dull, aching, shooting and aching quality.  The claimant averred labored breathing, easy fatigability, poor stamina and symptoms mimicking the flu.  The claimant contended to suffer headaches, TMJ and chest discomfit, rapid heart rate, lightheadedness and dizzy spells.  The claimant indicated that her symptoms were accentuated by many physical activities, and only partially attenuated with medications, inhalers, injections, rest and reclining.  According to the claimant, her conditions limited her ability to lift, stand, walk, sit, squat, kneel, climb, bend, remember, concentrate or persist on tasks.

[R. 16.]

Winningham's testimony at the hearing before the ALJ reflected her health difficulties.  She testified to having difficulty walking, standing, sitting, balancing, and breathing.  A vocational expert also testified as to the various jobs available when given different hypotheticals by the ALJ.

The ALJ issued a decision denying benefits [R. 10-19], and in doing so employed the standard five-step analysis.  At step one, the ALJ confirmed that Winningham had not engaged in substantial gainful activity since her application date.  At step two, the ALJ found Winningham suffered the following severe impairments: facet degenerative hypertrophy, lumbar spine; obesity; fibromyalgia; headaches; sarcoidosis; asthma/sinusitis; reflux disease; and degenerative changes, right knee.  At step three, the ALJ found that Winningham's conditions did not satisfy any listed impairment.  At step four, in analyzing Winningham's residual functional capacity, the ALJ found that Winningham could perform light work with the following qualifications:  she can lift and carry 20 pounds occasionally and 10 pounds frequently; she can stand and walk for 6 of 8 hours, and can sit 6 of 8 hours; she requires an

option to alternate to a sitting or standing position for 1-2 minutes every hour; she cannot climb ropes, ladders, or scaffolds; she can occasionally climb stairs or ramps; she cannot crawl or kneel; due to the possible side effects of medication and the distraction caused by pain and fatigue, she should avoid work around unprotected heights, dangerous moving machinery, open flames or large bodies of waters; she cannot perform occupational driving; she needs to work in an environment relatively free of noxious fumes, gases, respiratory irritants and extremes of temperature and humidity; and she is limited to simple and repetitive tasks.  At step five, the ALJ found that Winningham could not perform past relevant work but that there were a sufficiently significant number of jobs in the national economy that she could perform.

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  Winningham timely sought review of that decision by filing this case.

## DISCUSSION

My review of an ALJ's decision to deny social security benefits is limited to determining whether the decision is supported by substantial evidence.  *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion."  *Id.*  In other words, the ALJ's decision, if supported by substantial evidence and reached under the correct legal standard, will be upheld even if reasonable minds could differ as to the appropriate conclusion.  *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).  It is not my job to re-weigh evidence, choose among conflicting versions of events, decide questions of credibility, or substitute my own judgment for the ALJ's.  *Young*, 362 F.3d at 1001.

To receive disability benefits under the Social Security Act, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(E).  A claimant is deemed to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Moreover, a claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

Winningham takes something of a scattershot approach to challenging the ALJ's decision, but her various critiques can be generally categorized in one of four areas:  1) the ALJ erred at Step 2 in the analysis when considering the severity of various conditions; 2) the ALJ evidenced bias in her considerations of some of the medical opinions; 3) the ALJ improperly determined Winningham's credibility; and 4) the ALJ made various errors in considering the testimony of the vocational expert.  I will consider each of these categories in turn.

**1.  Winningham Has No Viable Step-2 Challenge**

Winningham's first challenge is that in Step 2 of the analysis the ALJ also should have 1) found Plaintiff's neck and mental impairment to be severe and 2) failed to properly consider her headaches.

The first argument is a nonstarter because (as already noted) the ALJ concluded that Winningham has numerous severe impairments.  The ALJ then went on in Step 4 to consider the totality of Winningham's impairments, both severe and non-severe.  Under these circumstances,

a Step-2 challenge is unwarranted. *See Henke v. Astrue*, 2012 WL 6644201, at *4 (7th Cir. Dec. 21, 2012) ("Because the ALJ proceeded beyond Step 2, and considered Henke's severe and non-severe impairments at Step 4, any purported error in the Step–2 severity determination was harmless."); *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) ("Deciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even one severe impairment. Here, the ALJ categorized two impairments as severe, and so any error of omission was harmless.").

The same is really true of Winningham's second argument that the ALJ failed to properly consider her headaches. First, this is not a proper Step-2 challenge because the ALJ in fact found that her headaches *were* a severe impairment. As the Commissioner rightly puts it: "Plaintiff ignores that the ALJ found her headaches to be a severe impairment at Step Two and considered them in the remaining steps of his decision, including the evidence he cited in reaching his [residual functional capacity] determinations, which was more restrictive than any [residual functional capacity] opinion offered by a medical source of record." [DE 22 at 8.] Moreover, Winningham's argument – that her headaches would affect her attendance and ability to stay on task during the weekday – is little more than speculation. She does not point to any hard medical evidence of this, as is her burden. *See* 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability.").

### 2. There is No Evidence of Bias by the ALJ

In part of his Step-2 analysis, the ALJ noted that in October 2008, in anticipation of her disability hearing, Winningham asked physicians at Arnett Clinic to provide a statement indicating that she was unable to work due to her medical conditions.  The ALJ then noted that the physicians were unwilling to send such a letter.  Winningham rightly points to the record to clarify that the response from the Clinic was more nuanced – the Clinic indicated that it did not know what the criteria for disability was, but that it could send a letter stating what Winningham's diagnoses were.  [R. 517-18.]  No doubt the ALJ should have been more precise in reviewing these correspondences.  But that is a far cry from saying the ALJ is biased, which is the enormous leap that Winningham makes:  "It is unfair and shows bias towards Mrs. Winningham for the ALJ to misstate evidence in the file."  [DE 16 at 22.]

Courts "begin with the presumption that ALJs are impartial," *Martin v. Astrue*, 345 F. App'x 197, 203 (7th Cir. 2009), and parties alleging judicial bias bear a "heavy burden." *Keith v. Barnhart*, 473 F.3d 782, 789 (7th Cir. 2007).  Thus, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994).  Given the high burden she faces, Winningham's evidence shows at most that the ALJ was guilty of imprecision, not bias.

I am also unpersuaded by Winningham's argument that the ALJ improperly discounted the opinion of her chiropractor.  The ALJ wrote that Winningham's chiropractor found that "the claimant's conditions prevented her from working in any capacity whatsoever."   [R. 18.]

Winningham argues that this statement differs materially from the chiropractor's actual statement that Winningham was "unable to work in any capacity." [DE 16 at 22-23.] This type of word parsing is nothing more than nitpicking. *See Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010) ("In analyzing an ALJ's opinion for such fatal gaps or contradictions, we give the opinion a commonsensical reading rather than nitpicking at it."). Moreover, this trifle is particularly immaterial since chiropractors are considered "other sources" whose opinions are generally entitled to significantly less weight than that of a physician, as the ALJ noted. 20 C.F.R. § 404.1513(d)(4); SSR 06-3p; [R. 17].

### 3. The ALJ's Credibility Determination was Proper

Winningham next argues that the ALJ's credibility determination was based on "meaningless boilerplate" because he included in his opinion the stock phrase "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." [R. 16.] This is one of the favorite refrains of social security plaintiffs in this circuit, and frankly who could blame them? The Seventh Circuit has repeatedly rejected this language. *See*, *e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 644-46 (7th Cir. 2012); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011). But simply reciting these magic words doesn't mean that the ALJ's decision is necessarily fatally flawed – it all depends on what the ALJ does after making that rote statement. If the ALJ goes on to conduct a cursory credibility analysis, then reversal is warranted; but if the ALJ conducts an assessment of the claimant's credibility in the context of a detailed assessment of medical record, then the credibility finding will be upheld. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th

Cir. 2012) ("If the ALJ has otherwise explained his [credibility] conclusion adequately, the inclusion of [the template] language can be harmless.").

In this instance, the ALJ did adequately explain his credibility analysis. Specifically, he determined the following:

> The evidence does not fully support the claimant's contentions as to the magnitude of her symptomology and dysfunction, including her expressed need to lie down and rest for extended intervals on most days. Though the claimant reported forgetfulness and episodic confusion, evaluators consistently found her to be alert, oriented, fluent and without apparent cognitive deficiencies. Within testimony or the written record, it was reported that the claimant was able to perform self-care tasks and other activities. The claimant prepared simple meals, washed dishes, started laundry, shopped, operated a motor vehicle for short distances, provided child care for her youngsters and attended her son's ballgames, participated in church services, assisted with family finances, met with family and friends, read and occasionally sewed.

[R. 17.] Thus, the "record provides adequate support for the ALJ's credibility finding" such that Winningham cannot demonstrate "that the ALJ's credibility finding is patently wrong." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). *See also Kittleson v. Astrue*, 363 Fed. App'x. 553, 557 (7th Cir. 2010) ("The ALJ's adverse credibility finding was not perfect. But it was also not 'patently wrong.'") (quoting *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)); *Scheck*, 357 F.3d at 703 ("The credibility determinations of an ALJ are entitled to special deference and we see no reason to overturn her findings.").

### 4. The ALJ's Reliance on the Vocational Expert was Sound

Finally, Winningham raises a number of challenges related to the testimony of the Vocational Expert ("VE") and the ALJ's Step-5 analysis. Winningham argues that the ALJ violated Social Security Rule 00-4p in not resolving alleged conflicts between the VE's testimony and the Dictionary of Occupational Titles (DOT). Rule 00–4p places an affirmative

duty on the ALJ to ask a VE whether her testimony conflicts with the DOT. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006). If an unresolved conflict arises that is *apparent*, the ALJ must then have the VE offer a reasonable explanation for the conflict. *Overman v. Astrue*, 546 F.3d 456, 462-63 (7th Cir. 2008).

In this case, the ALJ made the inquiry required by Social Security Rule 00-4p, the VE affirmed that her testimony was consistent with the DOT, and then she ultimately testified that someone with Plaintiff's background and limitations could perform the representative unskilled, light jobs of hand packer (6,000 jobs statewide), general office clerk (5,000 jobs statewide), and inspector (4,000 jobs statewide). [R. 37-44.] Winningham challenges this testimony on a number of fronts.

Winningham first argues that while the VE did "give DOT numbers for jobs at the sedentary level . . . there was no testimony about the jobs at the light level." [DE 16 at 18.] This was harmful error, she argues, for two reasons: 1) jobs at the sedentary level "are irrelevant given the ALJ's RFC in his decision" and 2) Winningham's legal representative "attempted to obtain the DOT numbers" for the jobs that the VE discussed at the light level "but his question was not answered." [DE 16 at 18.]

I disagree on both counts. The first argument – *i.e.*, that sedentary jobs are irrelevant to a Step-5 determination about the jobs she could potentially perform – requires little discussion because claimants that can do light work can also do sedentary work. *See* 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

9

Winningham's second argument is also unpersuasive. It is true that the record reflects confusion among the participants about the discussion regarding light jobs versus sedentary jobs [R. 40-43], but the record also reflects that Winningham's counsel was ultimately satisfied with the VE's testimony. After the confusion, the ALJ conducted follow-up questions of the VE and then stated to Winningham's counsel: "I'm sorry counsel, maybe that clears it up." [R. 43.] Winningham's counsel then answered: "That – that helps – helps in understanding [the VE's] testimony a little bit better." [*Id*.] Winningham's counsel thus had the opportunity to cross-examine the VE but he did not ask any additional questions about the DOT numbers for the other representative light, unskilled jobs the VE identified.

What all of this means is that, even if there was an unresolved conflict in the VE's testimony, it was not a conflict that was *apparent at the time of the hearing*. Judge Miller of this Court recently addressed the same issue under similar circumstances, and his reasoning is instructive:

> Ms. Nydegger's attorney had the opportunity to cross-examine the vocational expert about the consistency of his testimony with the DOT, but didn't do so. Nothing in the vocational expert's testimony, Dr. Thomas's testimony, or Ms. Nydegger's cross-examination, would have alerted the ALJ to a possible discrepancy between the expert's testimony and the DOT. Ms. Nydegger's educational background and cognitive abilities appear to match the requirements of both the general office clerk and surveillance monitor jobs. Under the circumstances, the court can't find that the conflict between the vocational expert's testimony and the DOT was so obvious that the ALJ should have picked up on it without assistance. While it would be helpful if administrative law judges required vocational experts to support their testimony with specific citations to the Dictionary, SSR 00–4p does not require administrative law judges to take that step. Accordingly, the court finds that the ALJ's determination at step five of the disability determination was supported by substantial evidence and the law.

*Nydegger v. Astrue*, 2011 WL 1234176, at *8 (N.D. Ind. March 30, 2011) (internal citations and quotations omitted).

10

The same analysis applies here.  Winningham's attorney had the opportunity to cross-examine the VE, and he never asked her for the DOT numbers of the other two representative light jobs and whether they were a general category, nor did he ask the ALJ to keep the record open so that he could cross-check the jobs with the DOT or follow up with any additional questions for the VE.  Similarly, Winningham's background and abilities would appear to match the requirements of hand packer, general office clerk, and inspector.  Thus, just as in *Nydegger*, under these circumstances I "can't find that the conflict between the vocational expert's testimony and the DOT was so obvious that the ALJ should have picked up on it without assistance." *Id.*

Winningham next argues that there was an inconsistency between the ALJ limiting Winningham to "simple repetitive tasks" but also finding that she could perform a general office clerk job that requires carrying out "detailed instructions."  As Winningham frames it:  "The ALJ has limited [Winningham] to simple repetitive tasks, which is inconsistent with the ability to carry out detailed instructions or deal with variables.  The testimony that Mrs. Winningham could perform this type of work with the RFC given by the ALJ is inconsistent with the DOT and is harmful error."  [DE 16 at 17-18.]  The Seventh Circuit has rejected this argument, however, finding that performing simple tasks is not necessarily inconsistent with the ability to carry out detailed instructions.  *See Jens*, 347 F.3d at 212-13 (affirming ALJ's holding that the claimant could still perform semi-skilled even with "deficiencies of concentration, persistence or pace").  Moreover, even if this was an inconsistency, it was not an *apparent* conflict such that the ALJ should have followed up on it.  *Terry v. Astrue*, 580 F. 3d 471, 478 (7th Cir. 2009) ("Terry's educational background and cognitive abilities appear to match the requirements of

11

GED reasoning level three, and so any conflict is not so obvious that the ALJ should have pursued the question."). The same goes for Winningham's argument that there was a conflict related to the VE's testimony about a "sit/stand" option in the ALJ's line of questioning: this was not an *apparent* conflict. *Zblewski v. Astrue*, 2008 WL 5206384, *4-5 (7th Cir. Dec. 15, 2008) ("Because the DOT does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the DOT.").

Winningham next argues that "[a]lthough the ALJ found that she would be limited because of side effects of medication, pain, and fatigue, the limitation to simple repetitive tasks does not address how her pace would be affected. This is harmful error. If these limitations exist, then their effect on pace must be considered because [they] will affect her ability to maintain employment." [DE 16 at 19-20.] She makes the same argument with respect to her poor breathing. [DE 16 at 20.] All of this, however, is in the context of the hypotheticals being posed by the ALJ to the VE, and in that context the ALJ raised questions only to the extent they were supported by the record medical evidence – which is all he had to do. *See Schmidt*, 496 F.3d at 845-46 ("We reject Schmidt's contention that the ALJ should have included additional mental and physical limitations in his questioning of the vocational expert, because the ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible.").

Finally, Winningham points to an inconsistency in the ALJ's opinion: the ALJ concluded that Winningham could not return to her job as a hand packer [R. 18], but then went on to conclude that she could perform work as a hand packer. [R. 19.] As the Commissioner's Response brief correctly points out however, "a review of the ALJ's decision reflects that he

12

mistakenly referred to one of Plaintiff's past relevant jobs (in furniture sales, which he correctly identified as semi-skilled and light) as a hand packer." [DE 22 at 22.]  Thus, this inconsistency was really just a superficial word choice mistake, not a deep or substantive error that requires reversal.  Said in another way, this is simply a harmless error.  *Parker*, 597 F.3d at 924 ("[H]armless error . . . is applicable to judicial review of administrative decisions and is thus an exception to the *Chenery* doctrine.").

## CONCLUSION

The ALJ provided legitimate reasons for his opinion.  While reasonable minds could differ, the only issue is whether the conclusion reached by the ALJ was supported by substantial evidence, and it was.  Accordingly, the decision of the ALJ is **AFFIRMED**.

**SO ORDERED**.

ENTERED: May 20, 2013.            s/ Philip P. Simon
                                  PHILIP P. SIMON, CHIEF JUDGE
                                  UNITED STATES DISTRICT COURT